```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
NICHOLAS J. GENOVESE,                                             :
                                                                  :
                              Plaintiff,                          :
                                                                  :     25-CV-2704 (JMF)
              -v-                                                 :
                                                                  :     OPINION AND ORDER
SECURITIES AND EXCHANGE COMMISSION,                               :
                                                                  :
                              Defendant.                          :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

  Plaintiff Nicholas Genovese was convicted, following a guilty plea, of securities fraud and sentenced to 140 months' imprisonment. Thereafter, the Securities and Exchange Commission (the "Commission") commenced an administrative proceeding to consider whether to limit, suspend, or bar Genovese from the securities industry. Proceeding without counsel, Genovese filed this lawsuit challenging the constitutionality of those administrative proceedings. Now pending are Genovese's emergency motion to stay the administrative proceedings, ECF No. 1; Genovese's motion for a preliminary injunction, ECF No. 3; the Commission's motion, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Genovese's Complaint, *see* ECF No. 18; *see also* ECF No. 19 ("Def.'s Mem."); and Genovese's cross-motion for summary judgment, *see* ECF No. 30 ("Pl.'s Mem."). For the reasons that follow, the Court concludes that it lacks subject-matter jurisdiction over several of Genovese's constitutional claims and that the remaining allegations fail to state a claim. Accordingly, the Commission's motion to dismiss is GRANTED and Genovese's motions for an emergency stay and preliminary injunction are DENIED as moot.

**BACKGROUND**

Unless otherwise noted, the following facts are taken from Genovese's filings, documents they incorporate by reference, and matters of which the Court may take judicial notice and are assumed to be true for purposes of these motions. *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).[1]

On March 1, 2018, a grand jury in this District indicted Genovese for securities fraud and wire fraud. *See United States v. Genovese*, 18-CR-183 (JMF), ECF No. 8. The Indictment alleged that from about January 2015 until at least about February 2018, Genovese engaged in a scheme to defraud investors in a purported hedge fund that he had founded and managed. *Id.* ¶¶ 1, 6, 9-19. Genovese pleaded guilty to securities fraud, *id.*, ECF No. 22, and on February 11, 2020, the Honorable William H. Pauley III sentenced him principally to 140 months' imprisonment and ordered him to pay $11 million in restitution. *See* ECF No. 3, ¶ 1. He is currently serving his sentence on home confinement. *Id.*

Under Section 203(f) of the Investment Advisers Act of 1940, the Commission has authority to bring "follow-on" administrative proceedings to limit or bar future investment adviser activity by people who have been, as relevant here, convicted of serious crimes, such as securities fraud. *See* 15 U.S.C. § 80b-3(e)(2), (f); *see also Bartko v. SEC*, 845 F.3d 1217, 1219-20 (D.C. Cir. 2017). A follow-on proceeding under Section 203(f) may be heard by the Commission itself or may be delegated by the Commission to a hearing officer (including an administrative law judge or ALJ) in the first instance, subject to review by the Commission. *See*

---

[1] Given Genovese's *pro se* status and the Court's obligation to afford him "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 100 (2d Cir. 2010), the Court construes his Emergency Motion to Stay, ECF No. 1, his Motion for Preliminary Injunctive Relief, ECF No. 3, and his affidavit, ECF No. 4, collectively to be the operative Complaint, *see* ECF No. 8.

17 C.F.R. § 201.110; *see also Jarkesy v. SEC*, 803 F.3d 9, 12 (D.C. Cir. 2015) ("The Commission presides over a proceeding, or, if the Commission so decides, an administrative law judge hears the case initially."). An aggrieved party may challenge any order issued by the Commission under the Investment Advisers Act, including orders under Section 203(f), through a petition for review "in the United States court of appeals within any circuit wherein such person resides." 15 U.S.C. § 80b-13(a).

On March 24, 2020, a little more than one month after Genovese's sentencing, the Commission issued an order instituting "follow-on" administrative proceedings ("OIP") against Genovese under Section 203(f) of the Investment Advisers Act. A.P. Docket Item dated Mar. 24, 2020 ("OIP").[2] The OIP included allegations regarding Genovese's criminal conduct, plea, and conviction. OIP 2. Importantly, it further provided that all filings would be "directed to and . . . decided by the Commission" itself, not by an ALJ. *Id.* at 3. Thereafter, the Commission's Enforcement Division, which prosecuted the case, and Genovese engaged in extensive motion practice. For example, Genovese argued that the Enforcement Division failed to meet its discovery obligations and filed a motion seeking additional documents. *See* A.P. Docket Item dated Mar. 18, 2024. In response, the Commission directed the Enforcement Division to produce a privilege log. *See* A.P. Docket Item dated Nov. 1, 2024. Additionally, the Enforcement Division filed a motion for summary disposition (which is akin to summary judgment in district court), which Genovese opposed. *See* A.P. Docket Items dated May 21, 2024, Mar. 14, 2025,

---

[2] "A.P. Docket Item dated _____" refers to an item on the public docket of Genovese's follow-on proceedings, which is available at https://www.sec.gov/enforcement-litigation/administrative-proceedings/3-19733 [https://perma.cc/MF3Q-8GYJ]. The Court takes judicial notice of these filings, albeit not "for the truth of the matters asserted" therein. *Press v. Primavera*, 685 F. Supp. 3d 216, 224 (S.D.N.Y. 2023) (internal quotation marks omitted) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).

and Apr. 7, 2025. On August 13, 2025, the Commission issued an opinion and order finding that "Genovese is unfit to participate in the securities industry" and barring him "from association with any investment adviser, broker, dealer, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization." A.P. Docket Item dated Aug. 13, 2025, at 1, 8, 10. On November 12, 2025, Genovese filed a petition for review of the Commission's order, *see Genovese v. SEC*, No. 25-2899 (2d Cir.), ECF No. 1, which remains pending.

In the meantime — before merits briefing in the "follow-on" proceedings concluded — Genovese filed this lawsuit asserting that the administrative proceedings are "unconstitutional" and should be enjoined. *See* ECF No. 1, at 1. Liberally construed, his Complaint asserts five claims, to wit: (1) that ALJs, who sometimes oversee administrative proceedings, enjoy removal protections that are unconstitutional, ECF No. 1, at 2; ECF No. 3, ¶ 13; (2) that being subject to the Commission's administrative proceedings deprives him of his Seventh Amendment right to trial by jury, ECF No. 1, at 2; ECF No. 3, ¶ 10; (3) that his criminal plea was coerced and is therefore invalid as a basis for follow-on proceedings, ECF No. 3, ¶ 11; (4) that the Enforcement Division's refusal to turn over certain documents he demanded in discovery violated his due process rights, *id.* ¶ 13; and (5) that subjecting him to follow-on proceedings after his criminal conviction violates the Double Jeopardy Clause of the Fifth Amendment, *id.* ¶ 12.

## LEGAL STANDARDS

As noted, the Commission moves to dismiss pursuant to either or both Rule 12(b)(1) and 12(b)(6). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing FED. R. CIV. P. 12(b)(1)).

4

When resolving a Rule 12(b)(1) motion, a district court may refer to evidence outside the pleadings, and the plaintiff bears the burden to prove subject-matter jurisdiction by a preponderance of the evidence. *See id.* By contrast, in reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 319-20 (S.D.N.Y. 2012) (citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). A court may not dismiss any claims pursuant to Rule 12(b)(6) unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.

## DISCUSSION

The Court will begin with the Commission's motion to dismiss because, absent a viable claim, Genovese's motions for an emergency stay and a preliminary injunction would be moot. More specifically, the Court will begin with the threshold question of whether it has subject-matter jurisdiction, which is the "unwaivable *sine qua non* for the exercise of federal judicial power." *Curley v. Brignoli, Curley & Roberts Assoc.*, 915 F.2d 81, 83 (2d Cir. 1990).

A. **Subject-Matter Jurisdiction**

When Congress prescribes "review in a court of appeals following the agency's own review process" — as it has for follow-on proceedings under Section 203(f) of the Investment Advisers Act, *see* 15 U.S.C. § 80b-13(a) — it impliedly "divests district courts of their ordinary jurisdiction" under 28 U.S.C. § 1331 over cases that involve the agency's action. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023); *see also Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207-12 (1994). That said, the Supreme Court has warned that "a statutory review scheme of that kind does not necessarily extend to *every* claim concerning agency action." *Axon*, 598 U.S. at 185. Instead, a district court has subject-matter jurisdiction to hear a challenge to agency proceedings if it is not "of the type Congress intended to be reviewed within this statutory structure." *Id.* at 186 (internal quotation marks omitted) (quoting *Thunder Basin*, 510 U.S. at 212). The Supreme Court has identified three questions, commonly known as the *Thunder Basin* factors, to guide that inquiry:

> First, could precluding district court jurisdiction foreclose all meaningful judicial review of the claim? Next, is the claim wholly collateral to the statute's review provisions? And last, is the claim outside the agency's expertise? When the answer to all three questions is yes, we presume that Congress does not intend to limit [district court] jurisdiction. But the same conclusion might follow if the factors point in different directions.

*Id.* (cleaned up).[3] Applying those factors, the Supreme Court has concluded that district courts lack jurisdiction over claims involving due process challenges to an agency's imposition of fines, *see Thunder Basin*, 510 U.S. at 205, and claims involving constitutional challenges to a law invoked to fire federal employees, *see Elgin v. Dep't of Treasury*, 567 U.S. 1, 21-22 (2012). By

---

[3]    Genovese contends that *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), overruled *Thunder Basin*. *See* ECF No. 30 ("Pl.'s Mem."), at 2. But *Loper Bright* did not concern Congress's authority to channel judicial review away from district courts and did not mention, let alone purport to overturn, *Thunder Basin*.

contrast, the Supreme Court has held that district courts have jurisdiction over constitutional challenges to the removal protections of agency heads, *see Free Enter. Fund v. PCAOB*, 561 U.S. 477, 490-91 (2010), and ALJs, *see Axon*, 598 U.S. at 195-96.

As the Supreme Court has explained, the claims in *Thunder Basin* and *Elgin* were dependent on the "outcome [of agency proceedings], or of other decisions made within [them]," pertained to something "particular about how th[e] [agency's] power was wielded," "address[ed] the sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision," and involved "considerations of agency policy" that pertained to the agency's "competence and expertise."  *Axon*, 598 U.S. at 192-94.  By contrast, the claims in *Free Enterprise Fund* and *Axon* involved "here-and-now" injuries in that they alleged an "unconstitutionally structured decisionmaking process, . . . irrespective of its outcome," "object[ed] to [agencies'] power generally," and raised only "standard questions of administrative and constitutional law" as to which the agency had no special expertise.  *Id.* at 192-94.  Put differently (and at the risk of oversimplifying), district courts lack jurisdiction to hear claims that are essentially challenges to an agency's "specific substantive decision[s]" or the "commonplace procedures" agencies use to arrive at those decisions.  *Id.* at 189.  But they may hear challenges "to the structure or very existence of an agency," which allege "that an agency is wielding authority unconstitutionally in all or a broad swath of its work."  *Id.*

In light of these standards, the Court concludes that it has subject-matter jurisdiction to hear Genovese's ALJ removal protection claim and his Double Jeopardy claim.  With respect to the former, *Axon* squarely controls.  There, as noted, the Supreme Court held that district courts have jurisdiction to hear constitutional challenges to ALJs' statutory removal protections because they are *structural* challenges to the agency's ability to conduct any sort of proceedings.  *Id.* at

195-96. Genovese's Double Jeopardy claim is of a similar nature. Absent district court intervention, a party bringing such a claim could not receive meaningful judicial review from the appellate court because "a double jeopardy claim contest[s] the very power of the Government to bring a person to trial, and the right would be significantly impaired if review were deferred until after the trial." *Richardson v. United States*, 468 U.S. 317, 320 (1984) (holding that interlocutory appeal is available for double jeopardy claims); *see also Abney v. United States*, 431 U.S. 651 (1977). As in the criminal context, appellate review of such a conviction is insufficient to remedy the harm because, even if it resulted in acquittal, the petitioner would "ha[ve] been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit." *Richardson*, 468 U.S. at 321 (cleaned up). Moreover, "the very nature of a double jeopardy claim is such that it is collateral to . . . whether or not the accused is guilty of the offense as charged," *Abney*, 431 U.S. at 659, and analysis of such claims turns only on "standard questions of . . . constitutional law," *Axon*, 598 U.S. at 194, as to which the Commission claims no special expertise. Thus, the Court concludes that it has subject-matter jurisdiction over both Genovese's ALJ removal protection claim and his Double Jeopardy claim.

By contrast, the Court concludes that it lacks subject-matter jurisdiction to hear Genovese's other claims. First, Genovese's claim that his criminal plea was coerced and is therefore invalid as a basis for follow-on proceedings, *see* ECF No. 3, ¶ 11, is, in essence, a collateral attack on his conviction and sentence.[4] But Congress has made it clear that 18 U.S.C.

---

[4] The Commission asserts that "Genovese does not seek to upset his conviction," but rather seeks only to "disput[e] the collateral estoppel effect of his criminal plea and conviction." Def.'s Mem. 14. But Genovese states outright that the government "reli[ed] on a coerced plea" in prosecuting him. *See* ECF No. 3, ¶ 11. In any event, even if the Commission's characterization were correct, the Court would lack subject-matter jurisdiction over the claim for substantially the same reasons laid out in the Commission's brief. *See* Def.'s Mem. 14-15.

§ 2255 "is generally the proper vehicle for a federal prisoner's challenge to his conviction and sentence." *Jiminian v. Nash*, 245 F.3d 144, 146-47 (2d Cir. 2001). So, while this type of claim is plainly not "of the type Congress intended to be reviewed" by the Commission and appellate courts (through petitions for review), *Axon*, 598 U.S. at 186, it is also not of the type that Congress intended to be reviewed by district courts in challenges to agency proceedings. Instead, it can be brought only via a Section 2255 petition. Notably, Genovese previously filed — and this Court has rejected — a motion pursuant to Section 2255. *See Genovese v. United States*, 22-CV-800 (JMF), 18-CR-183 (JMF), 2023 WL 2185699, at *3 (S.D.N.Y. Feb. 23, 2023). The Court lacks authority to review his claims on that front here.

The Court also lacks subject-matter jurisdiction to hear Genovese's due process claims regarding the Enforcement Division's document production. *See* ECF No. 3, ¶ 13. That is a quintessential attempt to challenge the "sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision." *Axon*, 598 U.S. at 193. It is not an "object[ion] to the [Commission's] power generally," but only to something "particular about how that power was wielded," and is tied up in the merits of the adjudication. *Id.* Indeed, in *Thunder Basin* itself, the Supreme Court rejected a similar due process claim on this basis, noting that the claim could be "meaningfully addressed in the Court of Appeals." *Thunder Basin*, 510 U.S. at 215. That is equally so where, as here, Genovese has already briefed the issue to the Commission, which addressed it, and has raised it again before the Second Circuit in his petition for review. *See Genovese v. SEC*, No. 25-2899, ECF No. 1 (2d Cir. Nov. 13, 2025). The claim can be meaningfully addressed in that forum and, thus, this Court lacks the power to hear it.

Whether the Court has subject-matter jurisdiction over Genovese's final claim — that being subject to follow-on proceedings violates the right to a jury trial in the Seventh

9

Amendment, *see* ECF No. 1, at 2; ECF No. 3, ¶ 10 — is a closer call. Stated at that level of generality, Genovese's claim could be construed as the type of structural challenge to agency proceedings that was at issue in *Axon* and *Free Enterprise Fund*. *See Wulferic, LLC v. U.S. FDA*, 793 F. Supp. 3d 830, 839-46 (N.D. Tex. 2025) (expressing this view). But nearly every district court to consider the issue has held that district courts lack subject-matter jurisdiction over Seventh Amendment claims like Genovese's. *See, e.g.*, *Sztrom v. SEC*, 24-CV-3548 (CRC), 2026 WL 61262, at *3 (D.D.C. Jan. 8, 2026); *NCRNC, LLC v. Kennedy*, 786 F. Supp. 3d 496, 504-08 (N.D.N.Y. 2025); *Lemelson v. SEC*, 793 F. Supp. 3d 1, 8-11 (D.D.C. 2025); *Vape Cent. Grp., LLC v. U.S. FDA*, No. 24-CV-3354 (RDM), 2025 WL 637416, at *5-9 (D.D.C. Feb. 27, 2025); *VHS Acquisition Subsidiary No. 7 v. NLRB*, 805 F. Supp. 3d 1, 7-9 (D.D.C. 2024); *Blankenship v. FINRA*, No. 24-CV-3003, 2024 WL 4043442, at *2-3 (E.D. Pa. Sept. 4, 2024); *Nexstar Media, Inc. Grp. v. NLRB*, 746 F. Supp. 3d 464, 469-73 (N.D. Ohio 2024).

The Court agrees with the majority view, substantially for the reasons ably articulated by Judge Moss in *Vape Central Group*. As Judge Moss observed there, unlike the all-encompassing challenges at issue in *Axon* and *Free Enterprise Fund*, Seventh Amendment challenges like Genovese's "focus[] on a narrow slice of the administrative proceeding, arguing that the [Commission] lacks authority to resolve any disputed issue of fact." 2025 WL 637416, at *6. But not all administrative proceedings involve disputed issues of fact. And, to the extent proceedings do not, they "conclude without any Seventh Amendment right 'accru[ing].'" *Id.* at *7 (quoting *Fid. & Deposit Co. of Md. v. United States*, 187 U.S. 315, 320 (1902) (alterations in original)).[5] In these cases, then, the resolution of preliminary questions of law within the

---

[5] District courts may grant summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure without violating a party's Seventh Amendment rights precisely because that

Commission's expertise could "obviate the need to address the constitutional challenge." *Elgin*, 567 U.S. at 22-23.[6] In fact, such speculative and contingent claims arguably can be resolved *only* after agency proceedings conclude. They are, in any case, a far cry from the "here-and-now" injuries in *Axon* and *Free Enterprise Fund* that warranted immediate district court review. *Axon*, 598 U.S. at 192. Furthermore, the fact that Genovese's Seventh Amendment argument turns, at least in part, on what happened in the administrative proceeding demonstrates that his claim is not "wholly collateral" to the statutory review scheme and does not lie entirely "outside the agency's expertise." *Id.* at 186. Accordingly, this Court joins Judge Moss and the majority of district judges to consider the issue and holds that it lacks subject-matter jurisdiction over Genovese's Seventh Amendment challenge to the Commission's follow-on proceedings.[7]

In sum, the Court concludes that it lacks subject-matter jurisdiction over Genovese's coerced plea claim, his due process claim, and his Seventh Amendment claim. These claims therefore must be — and are — dismissed for lack of subject-matter jurisdiction. By contrast, the Court has jurisdiction to address Genovese's ALJ removal claim and Double Jeopardy claim.

---

right only attaches when there is a disputed issue of fact to resolve. *See Shore v. Parklane Hosiery Co., Inc.*, 565 F.2d 815, 819 (2d Cir. 1977).

[6]   Indeed, in Genovese's case, preliminary proceedings *did* obviate his constitutional challenge. The Commission expressly found that summary disposition was warranted because "there is no genuine issue with regard to any material fact" regarding his conviction. A.P. Docket Item dated Aug. 13, 2025, at 4-5.

[7]   If the Court had subject-matter jurisdiction to consider the claim, it would nevertheless fail as a matter of law because debarment is an equitable form of relief to which the Seventh Amendment does not apply. *See Jarkesy v. SEC*, 34 F.4th 446, 454 (5th Cir. 2022) (observing that a "ban . . . from participation in securities industry activities" is an "equitable remed[y]."), *aff'd*, 603 U.S. 109 (2024).

**B. Failure to State a Claim**

That said, the Court need not dwell long on either of Genovese's surviving claims. His ALJ removal claim fails because his case was heard directly by the Commission, not by an ALJ. *See* A.P. Docket Item dated Mar. 24, 2020, at 2. It therefore does not implicate any of the statutory limitations on ALJ removal that Genovese argues are unconstitutional.[8] And Genovese's Double Jeopardy claim fails because the Double Jeopardy Clause "protects . . . against the imposition of multiple *criminal* punishments for the same offense," and debarment is a civil sanction, not a criminal punishment. *Hudson v. United States*, 522 U.S. 93, 99 (1997) (emphasis in original); *see id.* at 103 (observing that the fact that Congress conferred debarment powers on the Commission through the Investment Advisers Act "is prima facie evidence that [it] intended to provide for a civil sanction"). Genovese provides no proof — let alone the "clearest proof," *id.* at 100, that Supreme Court precedent requires — to show that Congress intended to transform debarment into a criminal penalty. *See id.* at 104-05 (explaining that "revocation of a privilege voluntarily granted, such as a debarment, is characteristically free of the punitive criminal element." (cleaned up)). His subsequent debarment via follow-on administrative proceedings therefore does not implicate the Double Jeopardy Clause. In short, both of Genovese's surviving claims must be and are DISMISSED for failure to state a claim.

## CONCLUSION

In sum, the Commission's motion to dismiss Genovese's complaint is GRANTED because the Court lacks subject-matter jurisdiction to hear three of Genovese's challenges to the

---

[8] Genovese does not argue otherwise or even address this issue in his opposition. *See* Pl.'s Mem. 3-4. He has therefore arguably abandoned the claim. *See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442 (TPG) (FM), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . ., a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

Commission's administrative proceedings and the other two challenges fail as a matter of law. Accordingly, Genovese's motions for an emergency stay and preliminary injunction are DENIED as moot. The Clerk of Court is directed to terminate ECF Nos. 1, 3, and 18, enter judgment for the Commission consistent with this Opinion and Order, mail a copy of this Opinion and Order to Genovese, and close the case.

SO ORDERED.

Dated: February 17, 2026
       New York, New York

_____
JESSE M. FURMAN
United States District Judge